Matthew D. Stockwell (MS-1804)
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
T: (212) 858-1000
F: (212) 858-1500
matthew.stockwell@pillsburylaw.com

*Attorneys for Plaintiffs Novotek Therapeutics*
*Inc. and Novotek Pharmaceuticals Limited*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOVOTEK THERAPEUTICS INC. and NOVOTEK PHARMACEUTICALS LIMITED, | Civil Action No. |
| Plaintiffs, | **COMPLAINT** |
| *-against-* | **JURY TRIAL DEMANDED** |
| AKERS BIOSCIENCES, INC., | |
| Defendant. | |

Plaintiffs Novotek Therapeutics Inc. and Novotek Pharmaceuticals Limited (collectively, "Novotek"), by and through their undersigned counsel, for their Complaint against Defendant Akers Biosciences, Inc. ("Akers"), alleges and states as follows:

### NATURE OF THE ACTION

1.      This action arises out of Akers' failure to comply with its contractual obligation to provide Novotek with various *in vitro* diagnostic ("IVD") products purchased by Novotek for marketing and distribution within the People's Republic of China.  In addition to pocketing more than $1,500,000 paid by Novotek for more than 100,000 IVD products that Akers never delivered, Akers' failure in this regard has caused Novotek to lose significant investments in the Chinese market and suffer millions of dollars in lost income.

2.     Novotek Therapeutics Inc. ("Novotek Therapeutics") is a company engaged in, *inter alia*, the marketing and distribution of IVD products.  Novotek Pharmaceuticals Limited ("Novotek Pharmaceuticals") is the parent company of Novotek Therapeutics.  Akers is a publicly traded company that, *inter alia*, manufactures and sells IVD products to distributors like Novotek.

3.     In 2012, Novotek Therapeutics and Akers entered into a Distribution Agreement, which appointed Novotek Therapeutics as Akers' exclusive distributor for the marketing and distribution of certain IVD products in Mainland China in the People's Republic of China.

4.     In 2015, Novotek Pharmaceuticals, on behalf of Novotek Therapeutics, paid Akers a total of $1,000,000 for 50,000 IVD products.  However, because Akers shipped those 50,000 IVD products to China before requisite government approvals had been obtained, those 50,000 units were destroyed at Akers' Chinese facility at Akers' request.  As a result, Akers agreed to replace those 50,000 units at no charge to Novotek.  Akers, however, never delivered those replacement units.

5.     Unfortunately, that was not the only time that Akers accepted and retained payments from Novotek for products that Akers never delivered.  In 2016, Novotek Pharmaceuticals paid Akers an additional $500,000 as an advance payment for IVD products, above and beyond the 50,000 units Akers already owed to Novotek.  To date, Akers has not provided those products either.

6.     Notwithstanding Akers' express written confirmation that it has received approximately $1,500,000 in advance payments from Novotek for various IVD products, Akers has failed to provide them.

7.     By refusing to provide Novotek with the IVD products Novotek paid for, Akers breached the parties' Distribution Agreement and has unlawfully retained funds from Novotek. As set forth herein, Akers' conduct has caused Novotek significant damage, including, but not

limited to: (1) approximately $1,500,000 that Novotek paid Akers for products never delivered; (2) lost investments to promote and sell the IVD products in Mainland China; (3) lost investments in obtaining government approval to sell the IVD products in China; (4) compensation to resellers that Novotek engaged to sell the IVD products in China; and (5) lost profits.

## THE PARTIES

8.      Novotek Therapeutics is a company focused on, *inter alia*, IVD products marketing and distribution. Novotek Therapeutics is a corporation duly organized and existing under the laws of the People's Republic of China, with its principal place of business at B-901, Yicheng International Center, Yizhuang Hightech Zone, Beijing, China. Novotek Pharmaceuticals is the parent company of Novotek Therapeutics, and is also a corporation duly organized and existing under the laws of the People's Republic of China, with its principal place of business at B-901, Yicheng International Center, Yizhuang Hightech Zone, Beijing, China.

9.      Upon information and belief, Akers is a United States company focused on developing, manufacturing, and supplying rapid screening and testing products designed to deliver healthcare information to healthcare providers and consumers in the United States, the People's Republic of China, and internationally. Upon information and belief, Akers is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business at 201 Grove Road, Thorofare, New Jersey 08086.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because Novotek is a foreign corporation with its principal place of business in Beijing, China; Akers is a New Jersey corporation with its principal place of business in Thorofare, New Jersey; and the amount in controversy exceeds $75,000.

11.     Venue properly lies in the District of New Jersey because the Distribution Agreement executed by the parties, as amended, provides that any action or suit arising thereunder shall be adjudicated in the Federal District Court of New Jersey.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1), because Akers is a New Jersey corporation.

## FACTUAL BACKGROUND

### The Distribution Agreement

12.     On or about December 1, 2012, Akers and Novotek Therapeutics executed a Distribution Agreement, pursuant to which Akers appointed Novotek Therapeutics as its exclusive distributor within the Mainland of the People's Republic of China of two IVD diagnostic products: (1) PIFA Heparin/PF4 Rapid Assay (serum), and (2) PIFA Pluss PF4 (whole blood) (collectively, the "IVD Products").  A true and correct copy of the Distribution Agreement is attached hereto as **Exhibit 1**.[1]

13.     Article 6.2 of the Distribution Agreement provides:

ABI is obliged to reply in writing via email to Novotek to accept Novotek orders or give reasonable explanation for rejecting the orders within ten (10) days, otherwise, orders from Novotek shall be considered as accepted from the date when orders are issued by Novotek.  The orders shall be binding when accepted in writing via email or with the relevant usage by ABI and the orders shall not be unreasonably rejected by ABI.  *ABI shall in strict accordance with the terms in this agreement and orders accurately and timely delivery of products*.  ABI agrees to supply Novotek with the [IVD] Products having more than 70% of shelf life remaining, within thirty (30) days after its acceptance of the orders.

Article 5 and Appendix I of the Distribution Agreement, in turn, set forth the price to be paid by Novotek for the IVD Products.

---

[1] Capitalized terms used herein are defined in the Distribution Agreement, and emphasis supplied herein is Plaintiffs', unless otherwise indicated.

14.    The Distribution Agreement was amended several times: by First Addendum dated December 1, 2014; Second Addendum dated January 7, 2016; Third Addendum dated June 29, 2017; Memorandum of the Third Addendum to dated July 24, 2017; and Fourth Addendum dated November 30, 2017.  True and correct copies of the foregoing addenda are collectively attached hereto as **Exhibit 2**.

**Akers Provides Novotek With a $200,000 Credit Towards Future Purchases**

15.    By letter dated December 1, 2014, Akers agreed to provide "Novotek a credit for US$200,000.00" for any IVD Products Novotek ordered in 2015 or 2016.  A true and correct copy of the December 1, 2014 letter is attached hereto as **Exhibit 3**.

**Novotek Makes $1,000,000 in Advance Payments to Akers for 50,000 IVD Products that Akers Never Delivers**

16.    On or about December 5, 2014, Novotek issued a purchase order to Akers for 50,000 IVD Products ("IVD Products").  A true and correct copy of the December 5, 2014 purchase order is attached hereto as **Exhibit 4**.

17.    Novotek made advance payments of $1,000,000 to Akers for the IVD Products (made in two payments of $500,000 in each of August and November of 2015).

18.    Akers shipped the IVD Products to Akers' facility in China.  However, on or about March 15, 2016, the IVD Products were destroyed at Akers' facility, at Akers' direction, because Akers shipped the products before the requisite government approvals were obtained in China.

19.    As a result, Akers agreed to provide Novotek with a $1,000,000 credit toward future purchases.  On June 29, 2017, the parties memorialized that agreement in the above-referenced Third Addendum (**included within Exhibit 3**), which provides that "ABI shall replace at no charge to Novotek 50,000 PIFA Heparin/PF4 Rapid Assays that were destroyed at Hainan Savy Akers Biosciences in 2016 or after, at Novotek's discretion."

20.     Novotek never received the IVD Products, notwithstanding the fact that Akers kept the $1,000,000 advance payment from Novotek, plus the $200,000 credit.

**Novotek Issues $500,000 Payment to Akers for Additional Products**

21.     Novotek Pharmaceutical subsequently paid Akers an additional $500,000 as an advance payment for additional IVD Products ("Additional Products"), in the form of two payments of $250,000 in each of April and June 2016.

22.     In May, 2016, Novotek received certain products valued at $196,263.60 toward the above-referenced $200,000 credit, leaving a balance due to Novotek of $3,736.40.

23.     Accordingly, as of July 2016, Novotek had:  (a) paid Akers $1,500,000, and accrued an additional $200,000 in credit, for IVD Products; and (b) only received $196,263.69 worth of IVD Products against that $1,700,000 in advance payments and credits.

**Akers Expressly Admits the Amounts it Owes Novotek**

24.     Akers expressly acknowledged as much, by letter dated March 29, 2017, when its Executive Chairman, Raymond F. Akers, Jr., informed Novotek:

> This letter confirms your prepayment in amount of USD$1,500,000.00 and the validity of a credit left for USD$3,842.31 of any combination of PIFA Heparin Platelet Factor-4 Rapid Assay to be used for orders under our agreement of the PIFA Heparin Platelet Factor-4 Rapid Assay ("Products").

Akers' Executive Chairman went on to promise:

> We will deliver you the Products that are worth USD$1,503,842.31 you will order in according with your orders.  And the shelf life of the Products, which will be thirty-six (36) months from the date of manufacture, shall remain more than seventy percent (70%) from the date of your acceptance.

A true and correct copy of Akers' March 29, 2017 letter is attached hereto as **Exhibit 5**.

25.     On June 23, 2017, Novotek purchased certain additional product having a total purchase price of $17,280.  That $17,280 was deducted from the $1,503,842.31 in prepayments to

Akers and credits to Novotek.   Accordingly, with that delivery, Akers has still retained $1,486,562.31 in advance payments for IVD Products never delivered.

26.      To make matters worse, of the 12,664 IVD Products that Akers actually provided to Novotek, 8,178 were delivered with nearly expired shelf-lives, contrary to the express terms of the Article 6.2 of the Distribution Agreement, which requires Akers to "supply Novotek with the Products having more than 70% of shelf life remaining."  *See* **Exhibit 1**.

27.      In August 2017, Novotek was forced to return those 8,178 IVD Products as they had less than five months of their three-year shelf-life remaining upon receipt, and therefore could not be distributed.  Akers has not yet delivered replacement products.

**Akers Publicly Acknowledges Receiving Payments in SEC Filings**

28.      In its securities filings, Akers repeatedly acknowledges receiving orders and payments for PIFA Heparin/PF4 Rapid Assays from Novotek.

29.      By way of example, in its March 31, 2016 Form 10-Q, Akers states that it had a $2.5 million order from Novotek, towards which it received a payment of $250,000 (the "March 2016 Form 10-Q").  The March 2016 Form 10-Q states: "On April 29, 2016, the Company received a payment of $250,000, in accordance with the terms of sale, from Novotek Pharmaceuticals Limited ("Novotek"), for the initial release of PIFA Heparin PF/4 products against the $2,500,000 order received February 29, 2016."

30.      The March 31, 2016 Form 10-Q is inaccurate. Novotek has, throughout the entirety of its relationship with Akers, only ordered a total of $1.75 million in IVD products.  Nevertheless, even though Akers overstates the amount of Novotek's order in the March 31, 2016 Form 10-Q, this filing clearly acknowledges the existence of a valid order from Novotek and that this order is equal to or greater than $1.75 million.

31.     In its June 30, 2016 Form 10-Q, Akers makes the same misstatement regarding a $2.5 million order, adding that a second payment of $250,000 was made by Novotek on June 28, 2016 for additional lots of PIFA Heparin/PF4 Rapid Assay products (the "June 2016 Form 10-Q").

32.     The June 30, 2016 Form 10-Q is inaccurate. As already noted above, Novotek has, throughout the entirety of its relationship with Akers, only ordered a total of $1.75 million in IVD products.  Nevertheless, even though Akers overstates the amount of Novotek's order in the June 30, 2016 Form 10-Q, this filing clearly acknowledges the existence of a valid order from Novotek and that this order is equal to or greater than $1.75 million.

33.     The same misstatements made in the June 2016 Form 10-Q and in the March 31, 2016 10-Q are stated again in Akers' September 31, 2016 Form 10-Q (the "September 2016 Form 10-Q"); Akers' December 31, 2016 Form 10-K (there has been "fulfillment during the year of approximately 20% of the $2.5 million order from Novotek, our [Akers'] exclusive distributor for PIFA Heparin/PF4 Rapid Assay products in the People's Republic of China."); Akers' Security Registration Statement Form S-1 dated November 24, 2017; Akers' Second Amendment to Security Registration Statement Form S-1 dated December 13, 2017; Akers' Prospectus, Registration No. 333-221746, dated December 18, 2017; and Akers' September 31, 2017 Form 10-Q (together, the "Statements").

34.     Each of the Statements appear to be incorrect in part, as Novotek has, throughout the entirety of its relationship with Akers, only ordered a total of $1.75 million in IVD products. Regardless of whether Akers overstated the amount of Novotek's order in the Statements, Akers' Statements acknowledge the existence of a valid order from Novotek and that this order is equal to or greater than $1.75 million.

35.     Furthermore, Akers' Statements acknowledge receipt of two payments from Novotek, totaling $500,000.

36.     In addition, in its December 31, 2017 Amended Form 10-K (the "2017 Form 10-K"), Akers states that during 2017, "Novotek purchased PIFA components totaling $500,000 which is included in other revenue." Likewise, Akers' June 30, 2018 Form 10-Q (the "June 2018 Form 10-Q") acknowledges a payment by Novotek of $500,000 in 2017.

37.     The December Form 10-K and June 2018 Form 10-Q appear to be incorrect, as, in 2017, Novotek, only purchased a total of $50,000 of IVD products from Akers (as set forth below).

38.     Regardless of whether Akers overstated the amount of Novotek's order in 2017, the 2017 Form 10-K and June 2018 Form 10-Q acknowledge the existence of a valid order from Novotek and that this order is equal to or greater than $50,000.

**Akers Requests and Receives Advance Payment for Additional Products it Never Delivered**

39.     Pursuant to the Third Addendum to the Distribution Agreement, in December, 2017 and March, 2018, Novotek paid Akers an additional $50,000 as an advance payment for a separate product called PIFA STAT Minireactors.

40.     Novotek has not received any PIFA STAT Minireactors from Akers.

41.     Additionally, pursuant to a December 14, 2018 purchase order, Novotek paid $15,000 to Akers for additional product which was never delivered. Akers acknowledged receipt of the payment in March, but refused to deliver the product that was paid for.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

42.     Plaintiffs repeat and re-allege each and every fact set forth in paragraphs 1-41, as if fully set forth herein.

43.     Novotek has substantially and materially performed under the Distribution Agreement, which is a valid and binding contract between Novotek and Akers.

44.     By failing to deliver the products Novotek paid for, Akers has breached the terms of the Distribution Agreement.

45.     As a direct and proximate result of Akers' breach, Novotek has and continues to suffer damages, including the $1,551,562.31 it has paid to Akers, as well as lost investments to promote and sell the IVD products in Mainland China, lost investments in obtaining government approval to sell the IVD products in China; compensation to resellers that Novotek engaged to sell the IVD products in China, and lost profits, the exact amounts to be shown at the time of trial.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

46.     Plaintiffs repeat and re-allege each and every fact set forth in paragraphs 1-45, as if fully set forth herein

47.      As set forth above, Akers has been paid $1,551,562.31 by Novotek, and has retained those funds without delivering the products Novotek paid for.

48.     Akers knowingly received and accepted the funds from Novotek, and it was the expectation of all parties that Novotek would receive products of equivalent value.  Indeed, Akers listed payments from Novotek as income on its financial statements.

49.     Akers' retention of these funds is inequitable because, since it has failed to deliver the products paid for, the funds belong to Novotek.  Novotek has been deprived of the use of these funds while Akers has received the benefit of retaining the funds.

50.     As a result, Akers has been unjustly enriched, and Novotek has been damaged, in the amount  of $1,551,562.31, exclusive of interest, attorneys' fees, disbursements and costs.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

51.     Plaintiffs repeat and re-allege each and every fact as set forth in paragraphs 1-50 as if fully set forth herein.

52.     Implied in the Distribution Agreement is the covenant of good faith and fair dealing.

53.     The purpose of the implied covenant is to further an agreement by protecting the promise against a breach of the reasonable expectations and inferences otherwise derived from the agreement.  By virtue of the Distribution Agreement, Novotek had a reasonable, justifiable and rightful expectation that Akers would perform its obligations under the Distribution Agreement in an ethical, professional and competent manner.

54.     As set forth above, Akers was obligated to deliver product to Novotek in exchange for moneys paid by Novotek to Akers.  Novotek has fully performed all of its obligations under the Distribution Agreement, except to the extent that such performance has been excused, prevented, hindered, frustrated and/or rendered useless by the acts and omissions of Akers.

55.     Nonetheless, Akers failed to perform its obligations and has failed to deliver the products Novotek paid for, wrongfully retaining Novotek's payments and benefiting from same, to the detriment of Novotek.

56.     Akers' bad faith conduct in connection with performing under the Distribution Agreement breached the implied covenant.

57.     As a direct and proximate result of Akers' breach, Novotek has and continues to suffer damages.

## RELIEF SOUGHT

**WHEREFORE**, plaintiffs hereby demand judgment as follows:

i.     On the First Cause of Action, in the amount of $1,551,562.31, plus damages for Novotek's lost investments to promote and sell the IVD products in Mainland China, lost investments in obtaining government approval to sell the IVD products in China; compensation to resellers that Novotek engaged to sell the IVD products in China, and lost

profits, the exact increasing amounts to be shown at the time of trial, plus costs, interest, disbursements and attorneys' fees;

   ii. On the Second Cause of Action, in the amount of $1,551,562.31, plus costs, interest, disbursements and attorneys' fees;

   iii. On the Third Cause of Action, in the amount of $1,551,562.31, plus damages for Novotek's lost investments to promote and sell the IVD products in Mainland China, lost investments in obtaining government approval to sell the IVD products in China; compensation to resellers that Novotek engaged to sell the IVD products in China, and lost profits, the exact increasing amounts to be shown at the time of trial, plus costs, interest, disbursements and attorneys' fees; and

   iv. for such other further relief as the Court deems just and proper.

Dated:  June 12, 2019     Respectfully submitted,

         PILLSBURY WINTHROP SHAW PITTMAN LLP

         */s/ Matthew D. Stockwell*

         Matthew D. Stockwell (MS-1804)
         31 West 52nd Street
         New York, NY 10019
         T: (212) 858-1000
         F: (212)  858-1500
         matthew.stockwell@pillsburylaw.com

         *Attorneys for Plaintiffs Novotek Therapeutics Inc.*
         *and Novotek Pharmaceuticals Limited*