```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| NOVOTEK THERAPEUTICS INC. and NOVOTEK PHARMACEUTICALS LIMITED, | 1:19-cv-13668-NLH-KMW <br><br> **OPINION** |
| Plaintiffs, | |
| v. | |
| AKERS BIOSCIENCES, INC., | |
| Defendant. | |

**APPEARANCES:**

MATTHEW D. STOCKWELL
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 WEST 52ND STREET
NEW YORK, NY 10019

    *Attorney for Plaintiffs.*

JUSTIN B. SINGER
205 EAST 42nd STREET
20th FLOOR
NEW YORK. NY 10017
GORDON REES LLP

    *Attorneys for Defendant.*

**HILLMAN**, District Judge

    This matter comes to the Court by way of partial motion to dismiss. On September 16, 2019, Defendant, Akers Biosciences, Inc., moved to dismiss two counts of Plaintiffs' Complaint through a first motion to dismiss. Defendant filed two motions

to amend its motion to dismiss on September 16 and 17, 2019, respectively. All three motions are currently before the Court. For the reasons stated below, the Court will grant the two motions to amend, and deny the motion to dismiss.

## BACKGROUND

Novotek Therapeutics Inc. is a China-based company engaged in the marketing and distribution of in vitro diagnostic products ("IVD products"). Novotek Pharmaceuticals Limited is the parent company of Novotek Therapeutics Inc. Collectively, Novotek Therapeutics Inc. and Novotek Pharmaceuticals Limited are referred to as "Novotek" throughout this Opinion.

Akers Biosciences, Inc. ("Akers") is a New Jersey-based company that develops, manufactures, and sells IVD products to healthcare providers and consumers both internationally and domestically.

<u>The Distribution Agreement</u>

In December 2012, Akers and Novotek executed a Distribution Agreement ("the Agreement") under which Novotek was designated as Akers' exclusive distributor for marketing and distributing two IVD products (PIFA Heparin/PF4 Rapid Assay (serum) and PIFA Pluss PF4 (whole blood)) in Mainland China and the People's Republic of China. Both parties cite parts of the Distribution Agreement to support their arguments. The relevant clauses and articles will be summarized below.

Article 3.3 of the Agreement states that "Novotek shall, at its sole cost and expense, take charge in the SFDA regulatory process and to get approval or permission from competent authorities in the Territory (if any) to sell or distribute" the IVD Products.

Article 5 and Appendix I of the Distribution Agreement set forth the price to be paid by Novotek for the IVD products it received from Akers.

Article 6.2 of the Agreement provides the conditions under which Akers could reject an order from Novotek.  This article also obligates Akers to deliver products "accurately and timely" with "more than 70% of shelf life remaining within thirty (30) days" after acceptance of Novotek's order.

Article 6.4 requires that Novotek "inspect the Products as to any defects of missing quantities" within three business days and states that the products "shall be deemed to have accepted such shipment when it signs for acceptance or upon the fourth business day after receipt."

Articles 8.1 and 8.2 require that Novotek be "in charge of all regulatory communication, filing and submission with SFDA." These articles further require Novotek to "cover all cost of regulatory approval in the Territory, including application fee, translation fee and clinical trial fee and other regulatory related cost mentioned in this agreement."

Article 21 discusses communication and notice between the parties.  Article 21.8 provides that the Agreement "sets for all intentions, understandings, covenants, promises, warranties, representations, conditions, rights and obligations of the parties.  Under Article 21.8, "[n]o subsequent modifications or amendments to this Agreement shall be binding upon the parties unless reduced in writing and signed by the respective authorized officers of the parties."  According to this article, all communication should be handled by Thomas A. Nicolette, Akers' Chief Executive Officer.

The Parties agree that the Agreement was amended several times, including on December 1, 2014, January 7, 2016, June 29, 2017, and lastly on November 30, 2017.  Novotek alleges that the Agreement was amended a further time on July, 24, 2017, through a "Memorandum of the Third Addendum."

December 2014 Purchase Order

On December 1, 2014, Novotek alleges that Akers sent Novotek a letter agreeing to provide a credit of $200,000 for any IVD products Novotek ordered in 2015 or 2016.  In December 2014, Novotek issued a purchase order to Akers for 50,000 IVD products.  Novotek made two advance payments of $500,000 for these products in August and November 2015, totaling $1,000,000.  Novotek alleges that Akers shipped these IVD products to Akers' facility in China.  However, according to Novotek, Akers

directed the destruction of these products because "Akers shipped the products before the requisite government approvals were obtained in China." In response to the destruction of the IVD products, Novotek alleges that Akers agreed to replace these products at no charge to Novotek. According to Novotek, this agreement was memorialized in the Third Addendum to the Distribution Agreement. To date, Novotek asserts that it has never received the replacement IVD products.

2016 Product Order

Novotek alleges that it paid Akers an additional $500,000 as an advance payment for additional IVD products, making two payments of $250,000 in April 2016 and June 2016. In May 2016, Novotek received certain products valued at $196,263.60 in fulfillment of its $200,000 credit with Akers. This transaction left a balance of $2,726.40 in Novotek's credit with Akers.

Novotek alleges that Akers acknowledged this outstanding credit and the payments Novotek made to Akers in a letter dated March 29, 2017. In this letter, Akers promised to "deliver you [Novotek] the Products that are worth $1,503,842.31." According to this letter, the shelf life of the products would be thirty-six months from the date of manufacture and "shall remain more than seventy percent (70%)" from the date of Novotek's acceptance. On June 23, 2017, Novotek purchased further

products from Akers with a purchase price of $17,280, which was deducted from Novotek's balance.

Novotek alleges that when it received 12,655 IVD products from Akers, 8,178 were delivered with nearly expired shelf-lives. In August 2017, Novotek returned the 8,178 IVD products, claiming they could not be distributed. Novotek alleges that it has not received replacement products.

Novotek alleges that it paid Akers and additional $50,000 in December 2017 and March 2018 as an advance for a separate product called PIFA STAT Minireactors. Novotek alleges that it has not received any of these PIFA STAT Minireactors from Akers.

Novotek placed another purchase order on December 14, 2018 and paid Akers an additional $15,000. Novotek alleges that Akers acknowledged receipt of this payment in March 2018 but refused to deliver any products.

According to Novotek, Akers acknowledged that it received payments from Novotek in its SEC Filings. Novotek supplies multiple examples of Akers stating, and in some cases overstating, its orders from Novotek.

<u>This Case</u>

Novotek filed a complaint against Akers on June 12, 2019. Novotek's complaint contains three counts against Akers: (1) breach of contract; (2) unjust enrichment; (3) breach of the covenant of good faith and fair dealing. Novotek seeks

6

$1,551,462.31, plus damages, costs, interest, and attorneys' fees.

In its complaint, Novotek alleges that Akers' failure to abide by the distribution agreement has caused Novotek significant damages: (1) $1,500,000 that Novotek paid to Akers for products that were never delivered; (2) lost investments to promote and sell IVD products; (3) lost investments in obtaining approval from the Chinese government; (4) compensation to resellers Novotek engaged; and (5) lost profits.

On September 16, 2019, Akers moved to dismiss counts one and three of Novotek's complaint. This matter has been fully briefed and is ripe for adjudication.

## DISCUSSION

A. Subject Matter Jurisdiction

This Court has original jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the parties. Novotek is a foreign corporation with its principal place of business in Beijing, China. Akers is a New Jersey corporation with its principal place of business in Thorofare, New Jersey. The amount in controversy exceeds $75,000.

B. Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon

7

which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Philips v. Cnty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff). A pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When weighing a motion to dismiss, the Court does not ask "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n. 8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'") (citations omitted).

In applying the Twombly/Iqbal standard, a district court will first "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." Fowler v. UPMC

8

Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678). Next, the Court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (citing Iqbal, 556 U.S. at 679).

To meet this standard, a "complaint must do more than allege the plaintiff's entitlement to relief." Id.; see also Philips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S at 556). The party moving to dismiss under 12(b)(6) "bears the burden of showing that no claim has been presented." Hedges, v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

C. Applicable law

As a federal court sitting in diversity, the Court must look to New Jersey law to determine whether Plaintiff's claims should be dismissed.

D. Novotek's Claims

1. Unjust Enrichment

Akers argues that Novotek's unjust enrichment claim should be dismissed because "the parties' relationship is governed by an enforceable, unrescinded contract (i.e., the Distribution Agreement)." Akers further argues that because the breach of contract claim and the unjust enrichment claim are "virtually identical" and the complaint "includes no facts to distinguish its breach of contract and unjust enrichment claims, it must be dismissed as a matter of law."

Though the Court recognizes that unjust enrichment is a quasi-contract claim, the District of New Jersey has "regularly permitted claims for both unjust enrichment and a breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature. MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F.Supp.2d 729, 736 (D.N.J. 2008); see also Red Haw Fire & Security, LLC v. Siemens Industry Inc., 2020 WL 1502932, at *7 (D.N.J. Mar. 30, 2020). The Court will therefore decline to dismiss Novotek's claim on this basis.

The Court will now assess whether the facts in the complaint are sufficient to show that Novotek has a plausible claim for relief. To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant

10

received a benefit and that retention of that benefit without payment would be unjust." Stewart v. Beam Global Spirits & Wine, Inc., 877 F.Supp.2d 192, 195 (D.N.J. 2012) (citing VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (1994)). "The enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract." Hassler v. Sovereign Bank, 644 F.Supp.2d 509, 519 (D.N.J. 2009).

In support of its claim for unjust enrichment, Novotek has established that it paid Akers $2,001,562.31. Novotek alleges not only that it did not receive the products it bargained for under the contract, but also that it was denied the opportunity to use this money in other ways. Akers argues that the Distribution Agreement does not provide a remedy for Akers' retention of funds. Akers does not dispute these facts, but instead contends that unjust enrichment cannot be pled in this case along with a breach of a written contract claim.

Accepting all of Novotek's well-pleaded facts as true, the Court will now determine whether the facts in the complaint are sufficient to show that Novotek has a plausible claim for relief. Novotek has alleged that Akers received the benefit of millions of dollars in payments from Novotek. Novotek has also alleged that Akers has failed to deliver the IVD products discussed in the Distribution Agreement. The Court finds that

11

Novotek has adequately pled that Akers' retention of Novotek's payments would be unjust. Novotek has pled that under the terms of the Distribution Agreement, Akers' retention of Novotek's payments without performance is not permissible. Novotek has adequately stated a claim for unjust enrichment. Aker's motion to dismiss with respect to this count will be denied.

    2. Implied Covenant of Good Faith and Fair Dealing

Akers argues that Novotek's third count for breach of the implied covenant of good faith and fair dealing is barred by the economic loss doctrine and that Novotek has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

    a. Economic loss doctrine

The economic loss doctrine "defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort." Peters v. Countrywide Home Loans, Inc., 2016 WL 2869059, at *4 (D.N.J. May 17, 2016) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 244 (3d Cir. 2010)). The rationale for this doctrine is that "[t]ort principles . . . are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damages that parties have or could have address[ed] in their agreement." Id.

This Court has previously held that breach of the covenant of good faith and fair dealing is a tort claim. Vassallo v. Bank of New York, 2016 WL 1394436, at * 3 (D.N.J. Apr. 8, 2016) ("negligence *per se*, breach of covenant of good faith and fair dealing, breach of fiduciary duty, and fraud in the concealment . . . are all tort claims based solely on the contractual relationship); see also American Financial Resources Inc. v. Countrywide Home Loans Servicing LP, 2013 WL 6816349, at *6 (D.N.J. Dec. 23, 2013). Failure to "fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort." Martino v. Everhome Mortg., 639 F.Supp.2d 484, 494 (D.N.J. 2009).

In sum, "remedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party to the plaintiff." American Financial Resources Inc., 2013 WL 6816349, at *6 (citing Int'l Minerals & Min. v. Citicorp, N.A., 736 F.Supp. 587, 597 (D.N.J. 1990)).

   b. Failure to state a claim

Under New Jersey law, "all contracts include an implied covenant that the parties to the contract will act in good faith." Pereira v. Azevedo, 2013 WL 1655988, at *8 (D.N.J. Apr.

13

17, 2013).  This obligation to act in good faith has been interpreted by New Jersey courts to mean that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Emerson Radio Corp. v. Orion Sales, Inc. 253 F.3d 159, 170 (3d Cir. 2001) (quoting Sons of Thunder Inc., v. Borden Inc., 148 N.J. 396 (N.J. 1997)).

To establish a breach of the covenant, a plaintiff must offer proof of "bad motive or intention."  Grande Village LLC v. CIBC Inc., 2018 WL 2192707, at *19 (D.N.J. May 14, 2018) (citing Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ct. Assocs., 182 N.J. 210 (N.J. 2005)). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."  Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (N.J. 2001).  A party breaches the duty of good faith and fair dealing if:

> that party exercises its discretionary authority
> arbitrarily, unreasonably, or capriciously, with the
> objective of preventing the other party from receiving
> its reasonably expected fruits under the contract.
> Such risks would be beyond the expectations of the
> parties at the formation of a contract when the
> parties reasonably intend their business relationship
> to be mutually beneficial.  They do not reasonably
> intend that one party would use the powers bestowed on
> it to destroy unilaterally the other's expectations
> without legitimate purpose.

Id.

Furthermore, a plaintiff "cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff."  Hassler, 644 F.Supp.2d at 518.

However, at this stage, "all that is required is an allegation of bad faith."  Alin v. American Honda Motor Co., Inc., 2010 WL 1372308, at *11 (D.N.J. Mar. 31, 2010) (citing Seidenberg v. Summit Bank, 348 N.J.Super. 243, 264 (App.Div. 2002)); see Fischell v. Cordis Corp., 2016 WL 5402207, at * 7 (D.N.J. Sept. 26, 2016) ("At the pleading stage, allegations of bad faith are sufficient to withstand the motion to dismiss).

Here, Novotek alleges that "Akers was obligated to deliver product to Novotek in exchange for moneys paid by Novotek to Akers."  Novotek alleges that it has fully performed all of its obligations except where "these obligations were excused, prevented, hindered, frustrated and/or rendered useless by the acts and omissions of Akers."  Novotek accuses Akers of failing to perform its obligations, failing to deliver the products Novotek paid for, and wrongfully retaining Novotek's payments and benefiting to the detriment of Novotek.

15

While the factual allegations cited above appear to be little more than those which support a pure breach of contract claim, Novotek alleges more. In addition, Novotek alleges that Akers took actions and made promises outside of the Distribution Agreement, and therefore these claims are not covered by contract law. Novotek has alleged that Akers has acted outside of the Distribution Agreement by making promises to Novotek about providing credit for future purchases. Novotek further alleges that Akers had acted in breach of the implied covenant of good faith and fair dealing by allowing its executive Chairman, Mr. Akers, to make promises and offer credits, and later claiming that Mr. Akers had no authority to make such promises or offer credits under Article 21.8. Novotek characterizes this conduct as "intentionally misleading conduct" which falls "squarely within the definition of breach of the duty of good faith and fair dealing."

The Court finds that Novotek's claim for breach of the covenant of good faith and fair dealing is not barred by the economic loss doctrine at the pleading stage. Novotek has shown that some facts of its claim, like the promises for future credit for IVD product purchases, are not established under the contract itself. Instead, these

facts and the related claims arise from an independent duty owed by Akers to Novotek.

Taking Novotek's pleadings of bad faith as true, the Court finds that Novotek has stated a claim for breach of the covenant of good faith and fair dealing.  Novotek has offered proof of Akers' bad motive or intention when offering Novotek credits for future IVD products and allowing its Executive Chairman to make promises.  At this stage, Novotek's allegations of bad faith are sufficient with withstand Aker's motion to dismiss.

Novotek has adequately stated a claim for breach of the implied covenant of good faith and fair dealing.  Aker's motion to dismiss with respect to this count will be denied.

## CONCLUSION

For the reasons stated above, Akers' motions to amend will be granted.  Akers' partial motion to dismiss will be denied.

An appropriate order will follow.


Date: June 8, 2020             _s/ Noel L. Hillman_____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.